Consumers Education and Protective Association, International, Inc., James Royal and Garland Dempsey, Plaintiffs, *v.* Thomas M. Nolan, Individually and as Chairman of the Rules and Executive Nominations Committee of the Pennsylvania Senate; Milton J. Shapp, Individually and as Governor of Pennsylvania; Ernest P. Kline, Individually and as President of the Pennsylvania Senate; and James M. Kelly, Individually and as Acting Chairman of the Pennsylvania Public Utility Commission, Defendants.

Argued September 9, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*David A. Scholl,* for plaintiffs.

*Norma P. D'Apolito,* Deputy Attorney General, with her, *Lawrence Silver,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for defendant, Milton J. Shapp.

*Jack Weinrauch,* with him, *A. Richard Gerber,* for defendants, Ernest P. Kline and Thomas M. Nolan.

*Barnett Satinsky,* Assistant Counsel, with him, *Edward J. Morris,* Counsel, and *Peter W. Brown,* Chief Counsel, for defendant, James M. Kelly.

OPINION BY PRESIDENT JUDGE BOWMAN, November 10, 1975:

For a period prior to April 15, 1975, Herbert S. Denenberg sat on the Public Utility Commission (PUC) by interim appointment, pursuant to the authority then vested in the Governor by Article IV, Section 8, of the Pennsylvania Constitution. On that date, the Acting Chairman of the PUC affirmatively denied Dr. Denenberg any continued official recognition of his interim role, and his seat on the PUC was thereafter treated as vacant. The legality of the events which precipitated the vacation of Dr. Denenberg's interim appointment is questioned by the litigation now before us.

On April 8, 1975, the Rules and Executive Nominations Committee of the Senate of Pennsylvania met and voted to refer Dr. Denenberg's appointment to the floor of the Senate for a confirmation vote. In attendance at the Committee meeting was the Executive Director of the Consumers Education and Protective Association, International, Inc. (CEPA), who objected to the Committee taking action on Dr. Denenberg's nomination, contending it had not complied with the prior public notice requirements of the Act of July 19, 1974, P. L. 486, 65 P. S. §261 et seq., (commonly known as the "Sunshine

Law"). On April 9, 1975, the full Senate voted not to confirm Dr. Denenberg's appointment, thereby insuring his removal from the PUC.

On April 14, 1975, CEPA, joined by two individual taxpayers,[1] filed a complaint, captioned "in equity," in this Court. Named therein as defendants were the Chairman of the Committee, the Lieutenant Governor as President of the Senate, and the Acting Chairman of the PUC. That same day, this Court denied CEPA's prayer for an ex parte preliminary injunction. An amended complaint was filed on April 30, 1975, naming the Governor as an added defendant. The four defendants responded with preliminary objections, and, having disposed of certain collateral matters, we must now determine the legal efficacy of defendants' objections.

Although waged with a variety of weapons, we are persuaded to narrow defendants' attack on the amended complaint to a single consideration, namely, whether CEPA has failed to state a cause of action upon which relief may be granted. CEPA contends that the Committee Chairman's failure to have provided prior public notice of the April 8th Committee meeting[2] invalidated the Committee's decision to refer the Denenberg nomination to the Senate floor. Then, proffering a legalistic "domino theory," CEPA argues that all subsequent actions performed in consequence of the "invalid" Committee meeting, namely, the Senate vote and the refusal to allow Dr. Denenberg's continued participation on the PUC, were equally invalid. Further, by extending its argument into the future, CEPA seeks to prospectively invalidate, and thereby enjoin, any attempts by the Gov-

---

1. The individual plaintiffs are also identified as officers of CEPA. We will henceforth refer to the plaintiffs collectively as CEPA.

2. The notice required by the Sunshine Law appears in Section 5, 65 P.S. §265.

ernor to offer alternative nominees to the Senate for confirmation to the PUC.

CEPA's syllogistics necessarily rest upon two fundamental conclusions regarding the application and effect of the Sunshine Law: (1) that the prior public notice requirements specifically and the Sunshine Law generally apply to Committee proceedings on executive nominations; and (2) that a failure to comply with said notice requirements necessarily invalidates any actions taken by an "agency" subject to the provisions of the Sunshine Law. The defendants have vigorously contested the first conclusion while silently conceding the second. Without assuming a similar posture of concession as to the second conclusion, we will concentrate our attention on CEPA's first conclusion.

That the Committee is an "agency" as defined in Section 1 of the Sunshine Law[3] and that the Committee's decision to refer the Denenberg nomination to the Senate floor constituted "formal action" under Section 1 are not disputed in this case. The issue thus emerges as follows: Whether the Sunshine Law, having created a general tenor of applicability to formal Committee proceedings on executive nominations, subsequently excludes such proceedings by the specific language of its Section 7?[4]

Section 7 of the Sunshine Law reads:

"For the purpose of this act, meetings of the Legislature which are covered are as follows: all meetings of committees where bills are considered, all hearings where testimony is taken, all sessions of the House of Representatives and the Senate. Not included in the intent of this act are party caucuses."

This section, addressing itself to the formal actions and meetings of the General Assembly and its constituent committees intended to be brought within the scope of

---

3.　65 P.S. §261.

4.　65 P.S. §267.

the Sunshine Law, specifically enumerates the actions and meetings so covered. This list does not encompass formal action of the Committee here in question in considering and acting upon the subject of a gubernatorial nomination for submission to the floor of the Senate. In so acting, it was not a meeting of the Committee "where bills are considered" nor was it conducting a hearing "where testimony is taken." Whether, in so acting in this capacity, it deemed it advisable to conduct an open or public meeting or to entertain views of citizens on the nomination does not change the character or nature of the meeting nor produce a different result. Within its authority and function under the rules of the Senate, it was acting upon an executive nomination and nothing else.

Nor are we persuaded that the concluding sentence of Section 7 can possibly alter this result. Whether this language constructs an exclusion from an inclusion or simply constitutes abundant precaution that party caucuses should not be considered within the scope of "sessions" of the General Assembly would be more of an exercise in semantics than productive in seeking the legislative intent. In either event, the result would be the same, that is, party caucauses are not subject to the Sunshine Law. However ineptly worded or placed within the context of Section 7, CEPA's reliance on this language as influencing the proper interpretation to be placed on the preceding language is, in turn, misplaced.

CEPA poses an alternative argument founded upon the published agenda of the April 8th meeting of the Committee. That is, even assuming that meetings of the Committee on the topic of executive nominations would not ordinarily be subject to the prior public notice requirements of the Sunshine Law, the specific Committee meeting here in question was so subject because the Committee allotted a portion of its April 8th meeting to the consideration of two bills then pending before the

legislature. Under CEPA's analysis, the April 8th meeting was therefore a meeting of a committee "where bills are considered" and within the inclusive language of Section 7. We are unconvinced.

CEPA's argument fails to discriminate between the act of violating the Sunshine Law and the consequences of such a violation. While the Committee's dereliction in conforming to the prior public notice mandates of the Sunshine Law may asperse the Committee's actions regarding any bills actually considered at the April 8th meeting, it would not have the sweeping effect of illegitimizing actions which are not within the application of the Sunshine Law in the first instance. The immunity of Committee proceedings on executive nominations from attacks founded upon the Sunshine Law cannot be lost through "guilt by association."

In conclusion, CEPA's complaint must fail. Meetings of the Rules and Executive Nominations Committee on the subject of executive nominations stand inviolate under the Sunshine Law, regardless of the nature of other matters, if any, considered at such meetings. CEPA has failed to state a substantial cause of action against the primary defendant, the Chairman of the Committee, and, therefore, CEPA's attempt to draw the other defendants within its scope of anticipated relief lacks the necessary foundation under the law.

Accordingly, we enter the following

## ORDER

Now, November 10, 1975, defendants' preliminary objection in the nature of a demurrer to plaintiffs' complaint in equity is hereby sustained for failure of plaintiffs to state a cause of action, and plaintiffs' complaint is hereby dismissed.