## Sunshine Law

KANE, Attorney General, ARENSBERG, Deputy Attorney General, and YAKOWICZ, Solicitor General, July 5, 1977—You have asked our opinion as to the legal consequences of recent developments concerning the so-called Sunshine Law of July 19, 1974, P.L. 486, 65 P.S. §§261-269. Please be advised as follows:

1. The provisions of section 7 of the Sunshine Law are conclusive regarding what functions of the General Assembly are subject to the open

meeting requirements. Only committee meetings where bills are considered, hearings where testimony is taken, and the sessions of the House of Representatives and the Senate are subject to the Sunshine Law.

2. That section of Official Attorney General's Opinion No. 46 of 1974 (4 Pa. B. 2054) which concluded that the Sunshine Law does not require disclosure of legal advice by agency counsel concerning pending or impending litigation or other legal proceedings is affirmed. The reasoning contained in that opinion is modified, however, and a new basis for the conclusion is formulated on rules of statutory construction.

3. The activities of deliberation, discussion and preliminary decision which lead to formal agency action are not within the statutory definition of formal action and, therefore, need not be conducted at an open meeting.

## MEETINGS OF THE GENERAL ASSEMBLY

In Consumers Education and Protective Ass'n. et al. v. Nolan et al., 21 Pa. Commonwealth Ct. 566, 346 A.2d 871 (1975), affirmed, 470 Pa. 372, 368 A.2d 675 (1977), suit was brought alleging that the failure of defendants to provide prior public notice of a meeting of the Senate's Rules and Executive Nominations Committee invalidated that committee's action in reporting the PUC nomination of Dr. Denenberg to the Senate floor. Plaintiffs also contended that all actions subsequent to that meeting were similarly invalidated, including the Senate vote not to confirm Denenberg and the refusal of the PUC to allow him to continue to participate on the PUC.

The Commonwealth Court rejected plaintiffs' contentions, holding that the meeting was not required to be open under the provisions of section 7 of the Sunshine Law. That section reads as follows:

"For the purpose of this act, meetings of the Legislature which are covered are as follows: all meetings of committees where bills are considered, all hearings where testimony is taken, all sessions of the House of Representatives and the Senate. Not included in the intent of this act are party caucuses. . ."

The court concluded that this section is conclusive in terms of enumerating what legislative functions must conform to the Sunshine Law. They rejected the contention that the last sentence of the section, dealing with party caucuses, in any way affects this interpretation. The court also rejected a contention that because the committee did consider several bills during the same meeting, the meeting was one "where bills are considered" and, therefore, within the ambit of section 7. They concluded that while this fact may affect the validity of any future action taken with regard to those bills, it could not affect the validity of the committee's action regarding the Denenberg nomination.

Accordingly, we conclude, based on the Commonwealth Court decision in this case, that section 7 of the Sunshine Law is conclusive in its enumeration of what functions of the General Assembly are subject to the Sunshine Law. Thus, only the following legislative acts need conform to the open meeting requirements: (1) committee meetings wherein bills are considered; (2) hear-

ings where testimony is taken; (3) all sessions of the House of Representatives and the Senate.[1]

## ATTORNEY-CLIENT PRIVILEGE

In Opinion of the Attorney General No. 46 of 1974, it was concluded that the Sunshine Law does not require disclosure of legal advice by agency counsel concerning pending or impending litigation or other legal proceedings. This conclusion was based on the premise that the Pennsylvania Supreme Court has "exclusive" jurisdiction in the matter of disciplining attorneys, and the legislature is without authority to interfere with or impair an attorney in the exercise of his duties as an officer of the court. While Opinion No. 46 was correct in its conclusion in this regard, there is an additional basis for that conclusion.[2]

---

1. It should be noted that Act 11 of the Act of February 4, 1976, P.L. 24, modified the public notice provisions required of the General Assembly. This act was passed over the Governor's Veto. (Governor's Veto No. 20, December 3, 1975.)

2. That section of Opinion No. 46 of 1974 reads as follows:

"Another provision which insures the confidentiality of discussions regardless of the agency involved is the attorney-client privilege, codified by the Act of May 23, 1887, P.L. 158, § 5(d) (28 P. S. § 321):

" 'Nor shall counsel be competent or permitted to testify to confidential communications made to him by his client or the client be compelled to disclose the same, unless in either case this privilege be waived upon the trial by the client.'

"There has recently been much discussion in other contexts as to whether there is any attorney-client privilege between government attorneys and the agencies which employ them due to the fact that the public is their real client. The issue must be framed as the question of which communications between government attorneys and their agency 'clients', if any, are required to be at open meetings under the Sunshine Law.

Section 10 of the Sunshine Law saves from repeal certain statutes. It reads:

"All acts and parts of acts are repealed in so far as they are inconsistent herewith, excepting those statutes which specifically provide for the confidentiality of information."

Disciplinary Rule 4-101(c)(2) compels disclosure of confidential information when *required by law*.

If section 10 is to be given any meaning at all, it must be read that the intent of the General Assembly is to continue to recognize the concept of confidences as it was known at the time of enactment and thereafter. In other words, the concept of confidences as found in the Code of Professional Responsibility was meant by the legislature to be con-

---

"This very question was faced by the District Court of Appeal of Florida, Second District, in Times Publishing Company v. Williams, 222 So.2d 470 (1969), in interpreting Florida's 'Government in the Sunshine Law.' Though not identical, Florida's Sunshine Law is sufficiently like Pennsylvania's to provide a valuable precedent.

"In that case, the Court held that the attorney-client privilege, subject to some exceptions, has effectively been waived by the Legislature by the Sunshine Law. 222 So.2d at 475. Citing the section of the Florida Constitution which gives 'exclusive' jurisdiction to the Supreme Court of Florida in the matter of disciplining attorneys, the Court stated that 'this disciplinary power necessarily includes the exclusive province to prescribe rules of professional conduct the breaching of which renders an attorney amenable to such discipline.' The Court held that in matters of pending or impending litigation a conflict could arise where the 'ethical obligations of the attorney clearly conflict with the dictates of this statute.' 222 So.2d at 476. The Court held that '[t]he legislature therefore is without any authority to directly or indirectly interfere with or impair an attorney in the exercise of his ethical duties as an attorney and officer of the court.' 222 So.2d at 475 (citations omitted). The court stated:

tinued notwithstanding the enactment of the Sun-shine Law. This theory is correct if one recognizes that the Code of Professional Responsibility has the effect of statutory law. Rules of practice promulgated by the Supreme Court have the effect of statute and must be followed; Dombrowski v. Philadelphia, 431 Pa. 199, 203, 245 A.2d 238, 241 (1968); Morrissey Estate, 440 Pa. 439, 269 A.2d 662 (1970); 10 P.L.E. 70, §54. Disciplinary rules promulgated by the American Bar Association become as effective as statutes when adopted by the Supreme Court as rules governing practice. "The Supreme Court shall have the power to prescribe general rules governing practice. . . All laws shall be suspended to the extent that they are inconsist-

---

" 'This is brought into focus, for example, if we consider the potential effect of extending the "open meetings" concept to a consultation between a governmental agency and its attorney involving settlement or adjustment of a matter in pending or contemplated litigation. Such settlement or adjustment, in the professional opinion of the attorney, may be fair and favorable to the public and, thus under Canon No. 8, it would be his duty to so advise. It may further be the professional opinion of the attorney, in the best interests of the public (his real client), that such consultation be private and confidential so as not to jeopardize the settlement. Indeed, he may well feel that such advice would be useless if revealed in such a case, and his duty to so advise would be completely compromised by a requirement that this advice be imparted in public. The client may have the right to accept or reject the judgment that settlement is called for, but it does not have the right to render impossible the attorney's duty to so advise; nor does the legislature have the authority to render this judgment sterile. The attorney's dilemma in the face of such legislation is obvious.' Id.

"In Pennsylvania the situation is virtually the same as in Florida, and it is submitted that the same analysis applicable to Florida's statute is applicable to Pennsylvania's."

ent with rules prescribed under these provisions": Pa. Constitution Art. V., sec. 10(c).

Because rules of practice have the effect of statutes and because of policy considerations in favor of the attorney-client privilege, section 10 of the act should be read as specifically excluding the attorney-client privilege of the Code of Professional Responsibility from the prohibitions of the Sunshine Law.

Alternatively, if the term "statutes" in section 10 of the act is narrowly interpreted to mean an Act of Assembly, the attorney-client privilege of the Code of Professional Responsibility is still excepted from the restrictions of the Sunshine Law by established principles of statutory construction.

An analysis of the Sunshine Law reveals that it does not on its face address the ethical problem of whether the act requires the disclosure of confidential information protected by the Code of Professional Responsibility. The ambiguity of the act was widely recognized at the time of its enactment and controversies over it prompted remarks in the House Journal on 11 different occasions. In enforcing the act, its shortcomings have become obvious. "In certain areas the Sunshine Law has proved unreasonably strict, while in others misleading and vague. Yet, even more critically, the law does not address a whole range of problems": Gubernatorial Veto No. 20, December 3, 1975.

When an act is ambiguous, it must be interpreted in light of established rules of statutory construction. The public disclosure mandates of the Sunshine Law and the attorney-client privilege of Canon 4 both concern the subject of the public availability of certain types of communications and are, therefore, in pari materia. Under the

Statutory Construction Act, statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things: 1 C.P.S.A. §1932. See also, Pa. R.C.P. 131. " 'Statutes are "to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence." ' " Erie School District Appeal, 155 Pa. Superior Ct. 564, 573, 39 A.2d 271, 275 (1944).

Being in pari materia the rule and the act must be construed together: 1 C.P.S.A. §1932. When statutes are in pari materia they should be considered concurrently whenever possible, and if they can be made to stand together, effect should be given to both as far as possible: First National Bank of Millville v. Horwatt, 192 Pa. Superior Ct. 581, 162 A.2d 60 (1960). Thus, attorneys should not be considered as being *required* to disclose confidential information absent an explicit provision in the act to this effect.

A second rule of statutory construction is that particular provisions control general provisions. The Statutory Construction Act of November 25, 1972, P.L. 707, 1 C.P.S.A. §1933, reads:

"Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision . . ." See also, Pa. R.C.P. 132.

The Sunshine Law deals broadly with the conduct of meetings of agencies in various situations. The attorney-client privilege of Canon 4 addresses

more limited situations. The privilege is not limited by the Sunshine Law; rather the Sunshine Law is limited by the privilege. When two statutes deal with the same things, a particular provision in one will control when the other statute is silent as to the matter: Millersville Annexation Case, 2 Pa. Commonwealth Ct. 587, 279 A.2d 349 (1971).

In conclusion, it is our opinion, and you are hereby advised, that the Sunshine Law does not require disclosure of legal advice by agency counsel concerning pending or impending litigation or other legal proceedings. This conclusion is based upon an interpretation of section 10 which rests on the policy consideration in favor of the attorney-client privilege. This conclusion is also based upon those rules of statutory construction which require that two statutes covering the same subject matter be interpreted in pari materia and that particular provisions in one law will control over general provisions in another law when each cover the same subject matter.

## DELIBERATIONS, DISCUSSIONS AND PRELIMINARY DECISIONS

In Judge et al. v. Pocius et al., 21 Pa. Commonwealth Ct. 580, 367 A.2d 788 (1975), the Commonwealth Court held that the activities of deliberation, discussion and preliminary decision which lead up to affirmative formal action are not within the statutory definition of formal action and, therefore, need not be conducted at an open meeting. In this case, six citizens and taxpayers of the City of Scranton sought to have declared as illegal certain actions taken by the Scranton School Board. The acts attacked were those taken by the board at a "work session" called by the

superintendent of schools, this session not having been publicized. The Court of Common Pleas of Lackawanna County found that no official policy had been set and no official final decision had been reached as to any of the matters discussed at the meeting. Based on these findings, the Commonwealth Court held that there was no violation of the Sunshine Law, since no formal action was taken or scheduled to be taken.

To a limited extent, this decision contradicts certain conclusions reached in Official Attorney General's Opinion No. 46 of 1974. In that opinion, it was held that:

"Policy setting would seem to refer to any discussions, deliberations or decisions with regard to the formation, endorsement, ratification or approval of a program or general plan pursuant to which agency business will be conducted or agency decisions made, and would include the promulgation, adoption or modification of rules and regulations setting forth substantive or procedural personal or property rights, privileges, immunities, duties, liabilities or obligations of the public or any part thereof."

Since this language would seem to include the preliminary activities discussed in Judge v. Pocius, supra, and held in that case not to be within the ambit of the Sunshine Law, Opinion No. 46 of 1974 must be revised to the extent that it conflicts with Judge v. Pocius. Accordingly, it is our conclusion, and you are so advised, that the activities of deliberations, discussion and preliminary decision which lead up to affirmative formal action are not within the scope of the Sunshine Law. If, however, the agency involved either sets, or intends to set, official policy at the meeting in-

volved, or if formal decisions are set, or scheduled to be set, at the meeting, then it must be publicized in accordance with the Sunshine Law regardless of the preliminary nature of the activities involved at the meeting.

In addition, it is believed that those sections of Opinion No. 46 of 1974 which deal with the terms "meeting" and "hearing" are still correct, and are, therefore, affirmed. In addition, the following section of Opinion No. 46, relating to formal action, is also believed to be a correct interpretation of the Sunshine Law despite the Commonwealth Court's ruling in Judge v. Pocius:

"It is clear from the Act that the Legislature intended 'any' vote to be open, not just 'formal' votes taken at 'formal' meetings. 'An informal conference or caucus of any two or more members permits crystallization of secret decisions to a point just short of ceremonial acceptance.' City of Miami Beach v. Berns, 245 So. 2d, 38, 41 (Fla. 1971). Thus, even a preliminary vote, a casual manifestation of the manner in which a subsequent vote will be cast, or a collective commitment or informal promise to approve or disapprove a particular matter of public agency business is within the purview of the Act. See, Board of Public Instruction of Broward Co. v. Doran, 224 So. 2d. 693, 698 (Fla. 1969). An agency cannot evade its obligations under the Act by agreeing to a course of action which will become effective or finalized at a subsequent formal meeting."

## CONCLUSION

This opinion does not purport to resolve all the issues which have arisen under the Sunshine Law since the promulgation of Opinion No. 46 of 1974.

It does serve to inform you of the impact of certain court decisions, and how those decisions affect the conclusions reached in Opinion No. 46. It is our belief that despite the narrow interpretation given the Sunshine Law in certain court decisions, adherence to the letter and spirit of the law will continue to ensure protection from personal liability for State officers and help prevent agency decisions from being invalidated due to non-compliance with the requirements of the act.