## Gowombeck v. City of Reading

*Thomas H. Kohn*, for petitioner.

*Peter F. Cianci and Jack A. Linton*, for respondent.

ESHELMAN, W. R., *J.*, June 15, 1988 — Petitioner Jonathan L. Gowombeck is the president of Local 1803, International Association of Fire Fighters, and filed this action in equity pursuant to the Sunshine Act, 65 P.S. §271 et seq. In his amended complaint filed on August 5, 1987 petitioner seeks to declare invalid all alleged "official action" and/or "deliberation" within the meaning of the act regarding an ambulance service contract entered into between the City of Reading and HealthTec, and

HealthTec, and which alleged official action or deliberation took place at certain meetings attended by members of city council, members of the "Emergency Ambulance Service Review Committee," city officials and/or representatives from HealthTec and private ambulance care providers. Petitioner alleges that these meetings were conducted in violation of the act due to the failure to give public notice, to conduct the meetings in open session and/or to maintain minutes of these meetings.

On August 31, 1987 petitioner filed a motion for a preliminary or special injunction and after hearing this court denied petitioner's motion on August 31, 1987. The case proceeded to a nonjury trial which was held on March 21, 1988. Upon consideration of the evidence presented at trial, we deny petitioner's amended complaint for injunctive relief.

## STATEMENT OF ISSUES

(1) Whether the Emergency Ambulance Service Review Committee constituted an "agency" as defined in the Sunshine Act, 65 P.S. §273.

(2) Whether the beginning portion of the pre-council meeting attended by the Emergency Ambulance Service Review Committee on April 14, 1987 relating to the ambulance service was excluded from the open session requirements of the Sunshine Act because it was an "executive session" as defined in the Act; 65 P.S. §§273 and 278.

(3) Whether the groups of persons attending meetings on April 22, 1987, May 6, 1987 and May 7, 1987 constituted an "agency" as defined in the Sunshine Act, 65 P.S. §273.

## FINDINGS OF FACT

(1) The City of Reading, Pennsylvania is a third class city and the legislative power is vested in a

council composed of the mayor and four councilmen. 53 P.S. §36002.

(2) Section 1005 of the Third Class City Code of 1931, 53 P.S. §36005, provides that pubic business shall be transacted at stated meetings of council fixed by ordinance.

(3) Article III of the codified ordinances of the City of Reading provides for regular (stated) meetings of council on Wednesday of each week at 10:00 a.m. with exceptions for holidays and evening meetings.

(4) On each Tuesday preceding the regular weekly Wednesday council meeting, a pre-council meeting is held by council at 9:00 a.m. in Mayor Warren Haggerty's chambers (with exceptions for holidays and evening meetings). The media and public are normally permitted to attend, and no official minutes of pre-council meetings are maintained.

(5) Local 1803, International Association of Fire Fighters, has for many years been the collective bargaining representative for the fire fighters, including the ambulance personnel employed by the City of Reading.

(6) The complainant, Jonathan L. Gowombeck, is the president of Local 1803, International Association of Fire Fighters, and a "person" within the meaning of the Sunshine Act, 65 P.S. §285.

(7) On January 14, 1987, at its regular weekly meeting, council passed resolution no. 12-87 which appointed four persons, none of whom were members of council, to "serve as members of the Emergency Ambulance Service Review Committee, retroactively effective, December 30, 1986, for the purpose of making recommendations to City Council for appointment of the . . . most qualified . . . providers of emergency ambulance service in the pri-

vate sector, within the City of Reading," the four persons appointed being Charles W. Schaeffer Jr., fire chief, William H. Rehr III, first deputy chief, Christopher Wade, volunteer fire fighter, and Robert F. Shapiro, assistant city solicitor.

(8) At various times between January 6, 1987 and February 24, 1987 the four members of the Emergency Ambulance Service Review Committee met regarding the ambulance matter. Meetings included reviewing written proposals submitted by prospective private providers of ambulance service, and listening to their oral presentations.

(9) On February 24, 1987 the Emergency Ambulance Service Review Committee met with council members and recommended to council that it accept none of the private contract proposals. The council passed resolution no. 93-87 which states that council accepts the recommendation of the Emergency Ambulance Service Review Committee to accept none of the private contract proposals and shall not act favorably upon any of the private contract proposals.

(10) On April 14, 1987, at approximately 9:00 a.m., a pre-council meeting was held in Mayor Haggerty's chambers, and in the beginning of the meeting all four members of the Emergency Ambulance Service Review Committee, all council members including Mayor Haggerty, and city solicitor Jack Linton, Esq. were present. Because of the confidential nature of matters to be discussed and on advice of Solicitor Linton, this beginning portion of the meeting was held in executive session, i.e., not open to the public, and discussion was had concerning ambulance service for the city. All four members of the Emergency Ambulance Service Review Committee agreed that if the city was going to engage a private contractor (although all members did

not agree that the city should do so) that HealthTec was the best qualified provider. At this time discussion was had of related issues involving a redefinition of duties and responsibilities of those present city employees performing ambulance service if a private contractor were engaged, as well as discussion of the legal claim filed against the city involving a grievance by Local 1803 over the ambulance service matter. Immediately following the executive session the meeting was opened to the public, no official minutes having been made of this pre-council meeting.

(11) On April 15, 1987, at its regular weekly meeting, council passed resolution no. 194-87 which authorized the mayor to appoint HealthTec as the sole provider of emergency ambulance service within the City of Reading, subject and contingent upon reaching an acceptable agreement between the parties and approved by the Office of the City Solicitor.

(12) On April 22, 1987 at its regular weekly meeting, council passed resolution no. 202-87 which disbanded the Emergency Ambulance Service Review Committee, the committee having completed its function by submitting its recommendation to council.

(13) On April 22, 1987 a meeting was held at City Solicitor Linton's office at 777 Court Street, Reading, at which Linton, Assistant City Solicitor Shapiro, Chief Rehr (not in his capacity as a member of the Emergency Ambulance Service Review Committee, but in the capacity as an advisor to the city because of his experience as a former chief of the city's ambulance service), and representatives from HealthTec, Patrick Kennedy and Jerry Donahue, were present to discuss the terms of the proposed agreement, and at this meeting Chief

Rehr raised the question as to whether the meeting was subject to the Sunshine Act.

(14) On May 6, 1987, from approximately 8:00 a.m. to noon, a meeting was held at City Hall at the city solicitor's office and present were City Solicitor Linton, Assistant City Solicitor Shapiro, Chief Rehr (in the capacity as an advisor) and representatives of four private providers of ambulance services, each of whom made additional presentations to clarify their proposals.

(15) On May 7, 1987 at approximately 1:00 p.m., a meeting was held at City Solicitor Linton's office at 777 Court Street, Reading, at which Linton, Assistant City Solicitor Shapiro, Chief Rehr (in his capacity as an advisor) and the two representatives from HealthTec, Kennedy and Donahue, were present to again discuss the terms of the proposed agreement, and at this meeting Chief Rehr raised the question as to whether the meeting was subject to the Sunshine Act.

## DISCUSSION

Petitioner seeks to declare invalid all actions taken at the pre-council meeting on April 14, 1987, the meetings between HealthTec and certain city officials on April 22, 1987 and May 7, 1987, and the meeting between certain city officials and prospective private providers of emergency ambulance service on May 6, 1987, on grounds that said meetings did not meet the requirements of the Sunshine Act, 65 P.S. §271, et seq. due to failure to give notice, failure to conduct the meetings in open session and/or failure to maintain minutes of those meetings.[1]

---

1. Petitioner also alleges in paragraphs nos. 13, 14 and 15 of his amended complaint that a meeting on July 8, 1987 was conducted in violation of the Sunshine Act, but no testimony concerning this meeting was presented at trial.

The Sunshine Act provides, inter alia, that "[o]fficial action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public unless closed under section 7, 8 or 12."[2] 65 P.S. §274. Further, "[w]ritten minutes shall be kept of all open meetings of agencies." 65 P.S. §276.

The first complained-of meeting was a pre-council meeting on April 14, 1987 at which all four members of the Emergency Ambulance Service Review Committee were present and gave their recommendation to council that if the city were going to employ a private contractor to render ambulance services (although all did not agree that the city should do so), that HealthTec was the best qualified provider. Unless otherwise authorized as a closed meeting, in order for any "official action and deliberations" by the committee at this pre-council meeting to have been subject to the open session and official written minutes requirements of the act the committee must have been an "agency" within the meaning of the act. The act defines an "agency" as follows:

"The body, and all committees *thereof* authorized by the body to take official action or render advice on matters of agency business, of . . . any . . . council . . . of any political subdivision of the commonwealth . . . ." 65 P.S. §273. (emphasis supplied)

The first issue is whether the committee was a "committee thereof" as provided in the first part of the definition of an "agency." We conclude that the committee was not an "agency" for the reason that it was not a committee "thereof," i.e., comprised of members of city council. An agency is "the body [council], and all committees thereof . . . ." None of

2. 65 P.S. §§277, 278 or 282.

the four members of the committee was a member of council and thus the committee was not a committee of council. Counsel for petitioner argues that since there is no question that the committee was authorized by council to render advice to it, the committee was therefore an agency. This argument, however, ignores the word "thereof." It is well settled that the "legislature cannot be deemed to intend that its language be superfluous and without import." *Consumers Education and Protective Association et al. v. Nolan et al.,* 470 Pa. 372, 387, 368 A.2d 675, 683 (1977) quoting *Daly v. Hamphill,* 411 Pa. 263, 273, 191 A.2d 835, 842 (1963).

However, even assuming arguendo that the committee was a committee "thereof" and "was authorized" by council "to take official action or render advice on matters of agency business," thereby meeting both parts of the definition of any agency, and that the committee's participation in pre-council meeting of April 14, 1987 was in the nature of official action or rendering advice, the second issue is whether said pre-council meeting on April 14, 1987 relating to the ambulance service matter was excluded from the open session and written minutes requirements of the act because it was an "executive session" within the meaning of the act.

The act makes a clear distinction between the openess required of agencies with respect to meetings involving official actions and deliberations in contrast to meetings involving discussion of confidential matters in executive sessions which are excluded from the open meeting requirements of the act. 65 P.S. §277. An agency may hold an executive session "[t]o consult with its attorney . . . regarding information or strategy in connection with litigation or with issues on which identifiable complaints are expected to be filed" or "[t]o discuss any matter in-

volving the employment, appointment, termination of employment, . . . terms and conditions of employment . . . of any specific . . . employee employed or appointed by the agency . . ." 65 P.S. §277. The beginning portion of the pre-council meeting of April 14, 1987 relating to the ambulance service issue was properly held in executive session for discussion of the prospect of engaging a private provider for city ambulance service, discussion of terms and conditions of the particular city ambulance employees engaged in ambulance service affected thereby and whose duties and responsibilities would have to be redefined, as well as discussion with the city solicitor of the legal claim filed against the city arising out of the ambulance service matter.

We therefore conclude that the beginning portion of the pre-council meeting of April 14, 1987 was an executive session and the open meeting requirements were not applicable. Since no evidence was presented concerning any requirement or absence of public notice of said pre-council meeting we do not consider notice to be an issue in this proceeding.

The third issue involves the three complained-of meetings held on April 22, 1987, May 6, 1987 and May 7, 1987. These were not meetings of the committee and occurred after council approval of resolution no. 194-87 which appointed HealthTec as the sole provider of emergency ambulance service within the city. In order for these meetings to have been subject to the open session and official written minutes requirements of the act, these persons must have constituted an "agency" within the meaning of the act. The meetings on April 22, 1987 and May 7, 1987 were both held at City Solicitor Linton's office at 777 Court Street, Reading, at which Linton, Assistant City Solicitor Shapiro, Chief Rehr (not in his capacity as a member of the committee, but in the

capacity as an advisor to the city because of his experience as a former chief of the city's ambulance service) and two representatives from HealthTec, Kennedy and Donahue, were present for the purpose of discussing terms of the proposed agreement between the city and HealthTec. The meeting on May 6, 1987 was held at City Hall in the City Solicitor's office and present were Linton, Shapiro, Rehr (in his capacity as an advisor to the city) and in sequence four private providers of ambulance services who each made additional presentations to clarify their proposals.

No person attending any of these meetings was a member of council. The first part of the definition of an agency, as discussed above, is "the body [council] and all committees thereof." Since the group of persons attending these meetings were not members of council, i.e., not a committee thereof, we conclude that the group of persons attending those meetings did not constitute an agency within the meaning of the act.

However, again assuming arguendo that each of these groups of persons was a "committee thereof," thereby meeting the first part of the definition of an agency, we conclude that the persons attending each of these meetings do not meet the second part of the definition of an agency, namely, they were not authorized to "take official action or render advice on matters of agency business." The meetings on April 22, 1987, May 6, 1987 and May 7, 1987 all occurred after official council approved at a regular weekly meeting resolution no. 194-87, which authorized the mayor to appoint HealthTec as the sole provider of emergency ambulance service within the city. The meetings were thus designed to execute council's authorization of engaging HealthTec as the provider of ambulance service

subject to approval by the city solicitor of an agreement between the city and HealthTec. These meetings are more accurately described as administration action, which does not come within the act's open meeting and written minutes requirements. The act defines "administrative action" as "[t]he execution of policies relating to persons or things as previously authorized or required by official action of the agency adopted at an open meeting of the agency . . ." 65 P.S. §273.

## CONCLUSIONS

(1) The Emergency Ambulance Service Review Committee did not constitute an agency within the meaning of the Sunshine Act and therefore was not subject to open meeting and written minutes requirements of the Sunshine Act.

(2) The beginning portion of the pre-council meeting on April 14, 1987 relating to ambulance service and attended by the Emergency Ambulance Service Review Committee was an executive session and was not subject to open meeting and written minutes requirements of the Sunshine Act.

(3) The groups of persons attending the meetings on April 22, 1987, May 6, 1987 and May 7, 1987 did not constitute agencies within the meaning of the Sunshine Act and the activities engaged in by said groups of persons constituted administrative action and the meetings were therefore not subject to open meeting and written minutes requirements of the Sunshine Act.

## DECREE NISI

June 15, 1988, it is ordered and decreed that petitioner's amended complaint requesting injunctive and other relief is denied, and the court finds in favor of the defendant.