546 A.2d 733

John Kennedy, citizen, and Bertram W. Olley and Daniel L. Schubert, Petitioners *v.* Commonwealth of Pennsylvania et al., Respondents.

Argued June 15, 1988, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and McGINLEY.

*John Kennedy,* with him, *Bertram W. Olley* and *Daniel L. Schubert,* for petitioners.

*Gregory R. Neuhauser,* Senior Deputy Attorney General, with him, *John G. Knorr, III,* Chief Deputy Attorney General, Chief of Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondent, Commonwealth of Pennsylvania, and The State Treasurer.

*C. Clark Hodgson, Jr.,* with him, *Ursula B. Bartels, Stradley, Ronon, Stevens & Young,* for respondents, The Senate and The House of Representatives of the Commonwealth of Pennsylvania, Robert C. Jubelirer, K. Leroy Irvis, James J. Manderino, Max Pievsky, Matthew J. Ryan, Richard A. Tilghman, F. Joseph Loeper and J. William Lincoln.

OPINION BY JUDGE DOYLE, August 19, 1988:

Before us for disposition are preliminary objections in the nature of demurrers filed by the House of Representatives and the Senate of Pennsylvania and certain officers thereof (collectively the Legislature) and by the Commonwealth and the State Treasurer (collectively the Commonwealth) to a complaint addressed to our original jurisdiction. That complaint was filed by Representative John Kennedy, Bertram Olley and Daniel L. Schubert (collectively Petitioners) who brought suit as citizens and taxpayers of the Commonwealth. In their complaint they seek to challenge, on various grounds, the constitutionality of House Bill No. 1288 which later became Act 28 of 1987 (Act). More precisely, they chal-

lenge an amendment to that bill which, *inter alia*, increased the salaries of the judiciary, certain Commonwealth officials and members of the Legislature and certain officers thereof. The bill did not provide an increase in salary for those individuals currently serving in the Legislature; it did, however, provide for such an increase effective after the next election which necessarily included some of the members of the Legislature who voted upon the legislation. With respect to those members who were serving a current term, the bill provided for unvouchered expense increases of $1,000 per month for the period from July 1, 1987 through November 30, 1988. This $1,000 per month unvouchered expense increase is the identical amount of the salary increase which was to become effective after the election. The bill also contained other unvouchered expense allowances for certain officers of the Legislature. Finally, the bill contained a severability provision declaring that if any portion of the Act were held invalid, the entire Act would be void. As noted above, this bill was enacted into law.

Petitioners challenge this piece of legislation on various grounds, *viz.*, that the unvouchered expenses actually constitute a salary and that raising the salary of legislators while they are in office is forbidden by the Pennsylvania Constitution; that the members who voted on the bill did not first disclose their pecuniary interests in the matter and that they voted on the legislation where they had such an interest in violation of the Pennsylvania Constitution; and that the nonseverability clause is violative of the Pennsylvania Constitution in that (a) it effectively denies those seeking to challenge it legal representation, (b) it exerts political pressure upon the judiciary, and (c) it is, in any event, void as against public policy. Petitioners seek as relief (1) a declaration that the pay raises and unvouchered expense allowances

to the Legislature are unconstitutional, (2) an order directing repayment to the Commonwealth Treasury of any payments made to members under the Act, (3) an order granting interest on the money and costs for the lawsuit, (4) an order restraining the Treasurer of the Commonwealth from making any more payments to the Legislature from the Commonwealth Treasury, and (5) an order directing the members of the Legislature to reimburse the Commonwealth immediately for all payments received pursuant to the Act.

Separate preliminary objections in the nature of demurrers were filed, one by the Legislature and one by the Commonwealth. The Legislature maintains that as to it the instant suit is barred by the Speech or Debate Clause of our State Constitution. The Commonwealth contends that Petitioners' complaint fails to state a cause of action and that the Commonwealth defendants are "immune by virtue of sovereign and official immunity from an order directing repayment with interest." We shall address each of the demurrers separately keeping in mind that when ruling upon preliminary objections in the nature of a demurrer we must accept as true all material and relevant facts that are well pled in Petitioners' complaint and all inferences reasonably deducible therefrom, but not conclusions of law. *Consumers Education and Protective Association v. Nolan*, 470 Pa. 372, 368 A.2d 675 (1977).

## THE LEGISLATURE'S PRELIMINARY OBJECTIONS

The Legislature asserts that with respect to it the instant suit is barred by the Speech or Debate Clause of Article II, Section 15 of the Pennsylvania Constitution. That provision pertinently provides:

> The members of the General Assembly shall in all cases, except treason, felony, violation of their oath of office, and breach or surety of the

peace, be privileged from arrest during their attendance at the sessions of their respective Houses and in going to and returning from the same; and for any speech or debate in either House they shall not be questioned in any other place.

In *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 507 A.2d 323 (1986), certain taxpayers challenged on constitutional grounds an act establishing the salaries and compensation of, *inter alia*, the Legislature. As here, the taxpayers there sought to have the act declared unconstitutional and requested both recoupment by the Commonwealth of monies paid and an injunction enjoining further payment. And, as here, the Legislature maintained that the Speech or Debate Clause barred the suit. In addressing this issue, Chief Justice NIX wrote:

> In Consumer Education and Protective Association v. Nolan, 470 Pa. 372, 368 A.2d 675 (1977), we determined that the Pennsylvania Speech and Debate Clause, like its federal counterpart, should be broadly interpreted to protect legislators from judicial interference with their legitimate legislative activities, and that even where the activity questioned is not literally speech or debate, a court must determine whether it falls within the 'legitimate legislative sphere.' . . . We further reasoned . . . that although we are not bound by the cases interpreting the federal speech and debate clause, those cases provide guidance in formulating the policy considerations underlying the Pennsylvania Speech and Debate Clause. . . . We set forth those federal policy considerations we deemed relevant to an analysis under the Pennsylvania Speech and Debate Clause:

. . . The Supreme Court has stated that the Clause is designed to protect 'the independence and integrity of the legislature.' . . . The legislative immunity created by the Clause 'insures that legislators are free to represent the interests of their constituents without fear that they will be later called to task in the courts for that representation.'

. . .

We believe that nothing is more basic to the independence and integrity of the legislature than its ability to pass legislation. Should we hold today that legislators can be held personally liable for disbursements under a duly enacted bill subsequently challenged as unconstitutional, it would indeed impede the ability of the legislators to represent the interests of their constituents because of the fear that they will be later called to task in the courts for that representation. . . . As noted by the Commonwealth Court, '[c]learly, nothing is more with the legitimate legislative sphere than the process leading up to and the passage of legislation.'

. . .

[T]he very core of the Speech and Debate Clause is the protection of 'the integrity of the legislative process by insuring the independence of individual legislators.' . . . To permit Article III, section 15 to be effective in its purpose, the immunity of the legislators must be absolute as to their actions within the 'legitimate legislative sphere.' To accomplish this we must not only insulate the legislator against the results of litigation brought against him for acts in the discharge of the responsibilities of his office, but also relieve him of the responsibility of defending against such claims. . . .

*Consumer Party,* 510 Pa. at 171-74, 507 A.2d at 329-331 (citations and footnotes omitted). We find this language to be controlling on this issue and accordingly, we will sustain the Legislature's preliminary objection.

## THE COMMONWEALTH'S PRELIMINARY OBJECTIONS

The Commonwealth contends in its brief, in summary, that the identical constitutional challenges raised (except for the nonseverability issue) were raised and decided in *Consumer Party* and, hence, that Petitioners' complaint fails to state a cause of action. We agree. With respect to the increase of an unvouchered expense account being afforded to current members of the Legislature, Petitioners assert a violation of Article II, section 8 of the Pennsylvania Constitution.[1] Chief Justice NIX rejected this notion when he opined:

> Article II, section 8 [of the Pennsylvania Constitution] by its own terms prohibits only salary increases in 'salary' or 'mileage' during the term in which the law providing for such an increase is passed, while section 5 of the Compensation Act provides for an 'unvouchered expense allowance.' The canons of statutory interpretation require that the words of an enactment be given their plain meaning. . . . In addition, as stated above, it is to be presumed that the legislature does not intend to violate the Constitution.

---

[1] Article II, section 8 states:

The members of the General Assembly shall receive such salary and mileage for regular and special sessions as shall be fixed by law, and no other compensation whatever, whether for service upon committee or otherwise. No member of either House shall during the term for which he may have been elected, receive any increase of salary, or mileage, under any law passed during such term.

The basis of appellant's argument is that the increased expense allowance during the legislative term provided for in the Compensation Act is additional 'salary.' This argument ignores the clear distinction between salary and expense allowances. 'Salary' has been defined as 'a fixed payment at regular intervals for services, especially when clerical or professional.' . . . We have long recognized that salary is compensation for services performed. . . . In contrast, an expense allowance is an amount furnished to pay for expenses incurred in the performance of those services. . . . An expense allowance for legislators has been provided for by statute since 1956. . . . Moreover, an augmentation of the expense allowance during term is hardly without precedent. The General Assembly has periodically increased the allowance to be received during its existing term. . . .

*Consumer Party*, 510 Pa. at 184-85, 507 A.2d at 336-37 (citations omitted). The Supreme Court then discussed the bookkeeping disadvantages of requiring a vouchered procedure and concluded that "[a] system which provides for unvouchered expense allowances largely avoids such disadvantages." *Id.* at 186, 507 A.2d at 337. The Court then explained that as long as the expense allowance is reasonably related to the actual expenses, a lack of mathematical precision does not present a problem. It also noted that in *Consumer Party* there was no evidence to show that the expense allowance was unreasonable. Further, the Court made it clear that the burden of proving unreasonableness is upon the taxpayers. In this case Petitioners' complaint does not plead that the $1,000.00 expense increase is unreasonable and that a lesser amount would be reasonable. Instead, it attacks, on constitutional grounds, the increase in its en-

tirety as one which is, in reality, a salary hike. We conclude that the above-quoted language is controlling upon the issue presented here and, thus, fatal to Petitioners' theory of a constitutional violation of Article II, section 8.[2]

As to the questison of whether there has been a constitutional violation of Article III, section 13, where members have not disclosed their own pecuniary interest in a bill and have not abstained from voting upon it, that, too, was considered in *Consumer Party* where the Court held:

> Appellants also allege a violation of Article III, section 13 of the Pennsylvania Constitution, which provides:
>
> A member who has a personal or private interest in any measure or bill proposed or pending before the General Assembly shall disclose the fact to the House of which he is a member, and shall not vote thereon.
>
> . . .

---

[2] *Loushay Appeal*, 169 Pa. Superior Ct. 543, 83 A.2d 408 (1951), *aff'd on other grounds*, 370 Pa. 453, 88 A.2d 793 (1952), cited by Petitioners, is distinguishable. There, certain expense allowances awarded to local officials currently in office were struck down on constitutional grounds because the facts as established in an auditor's surcharge proceeding showed them to be unreasonable. Even if the Superior Court's holding, which is based upon certain statutes not relevant here, be deemed relevant, the Supreme Court, although affirming, completely disavowed the Superior Court's reasoning because it had failed to consider a relevant amendment to the statute in question. Thus, even if the Superior Court's opinion in *Loushay* were pertinent, the Supreme Court in *Consumer Party* has declined to follow it and has adopted a contrary position by which we are bound.

As to Petitioners' averment that the Retirement Board viewed the expense increase as salary, we believe such allegation to be legally irrelevant.

Appellants argue that in voting for S.B. 270 the members of the General Assembly impermissibly voted on a bill in which they had a personal interest. This contention is absurd. Article III, section 24 of our state Constitution provides that '[n]o money shall be paid out of the treasury, except on appropriations made by law. . . .' Pa. Const. Art. III, §24. Pursuant to Article II, section 1, the legislative power is vested in the General Assembly. If appellants' theory were correct, the expense allowances of the members of the General Assembly could never have been established, let alone increased. Such an interpretation of Article III, section 13 is manifestly unreasonable. By requiring disclosure of a 'personal or private interest,' Article III, section 13 makes clear that its prohibition relates to the type of interest of which other members would not be generally aware.

*Consumer Party,* 510 Pa. at 187 n.18, 507 A.2d at 338 n.18. Based upon this language, we must conclude that no cause of action is pled with respect to the Article III, section 13 claim.

Finally, we consider the challenge to the nonseverability provision. This provision states, "The provisions of this act are nonseverable. If any provision of this act or its application to any person or circumstance is held invalid, the remaining provisions or applications of this act are void." Petitioners assert that this provision has the effect of holding the judiciary hostage because if it strikes down the Legislature's unvouchered expenses, its own salary increase will be void as well. Petitioners also contend that because their position would be unpopular with the judiciary it is unlikely that any attorney would represent them for fear of alienating the judiciary.[3]

---

[3] Petitioners appear pro se here.

They further contend that the nonseverability provision has "effectively closed the courts to a party seeking to challenge the legislators' chicanery." They reason that this effective closure of the courts violates their constitutional rights under Article I, section 11 of the Pennsylvania Constitution. Petitioners also assert that placing such pressure on the judiciary contravenes the spirit of Article III, section 27 of the Pennsylvania Constitution and that, in any event, the clause is void as against public policy.

Article I, Section 11 provides:

All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

As to the claim that this provision precludes access to the courts, we cannot help but note first that Petitioners *are* here. And, we believe that the focus of Article I, section 11 is upon a fair and open trial and not upon the difficulties attendant upon the burdens of proof in a particular lawsuit.[4] We thus conclude that Petitioners have not stated a cause of action under this constitutional provision.

Next we consider Petitioners' public policy argument. It is true, as Petitioners contend, that public policy favors severability. *Department of Education v.*

---

[4] Petitioners do not aver that they were unable to obtain counsel but only that the provision is violative of the Constitution "by discouraging litigants from challenging its constitutionality, with the assistance of counsel. . . ." Paragraph 43 of Petitioners' complaint. Because we conclude that no cause of action under Article I, section 11 exists, leave to amend would be fruitless.

*First School,* 471 Pa. 471, 370 A.2d 702 (1977). But, we believe that severability becomes an issue only if a substantive portion of the legislation is held unconstitutional. We note that the Legislature enjoys a heavy presumption that it did not intend to violate the Constitution, *Consumer Party,* and its acts enjoy a strong presumption of constitutionality. *Id.* One seeking to negate that presumption bears a heavy burden of persuasion and legislation will not be invalidated unless it clearly, palpably and plainly violates the Constitution. *Id.* Petitioners have failed to meet this burden to demonstrate a constitutional violation in any substantive provision of the act.

While the motives of the Legislature could be viewed as self-serving, we do not believe it is our province to inquire into those motives absent a substantive constitutional violation, even where there may be a negative impact upon the public. Indeed, in *Brookins v. O'Bannon,* 699 F.2d 648 (3d Cir. 1983), where welfare recipients challenged the nonseverability of certain amendments to the Public Welfare Code because the nonseverability provision precluded a successful challenge to one portion of the amendment without losing the benefit of another portion of the amendment, the court of appeals upheld the district court's finding of no constitutional violation. We must, thus, conclude that a negative effect caused by a nonseverability provision does not, in and of itself, create a constitutional violation.

Finally, there is the question of whether the nonseverability provision violates the spirit of Article III, section 27 of the Pennsylvania Constitution by providing for the possible diminution of judicial salaries. Article III, section 27 states, "No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment." In light

of our resolution of the other issues, we believe that this question is now rendered moot and, hence, decline to decide it.[5]

Based upon the foregoing opinion, we shall sustain the Commonwealth's and the Legislature's preliminary objections and dismiss the complaint.

## ORDER

NOW, August 19, 1988, the preliminary objections of the Legislature in the nature of a demurrer are sustained. Further, it is ordered that the preliminary objections of the Commonwealth in the nature of a demurrer are sustained. Petitioners' complaint is dismissed with prejudice.

---

[5] We note that the Supreme Court has observed, in any event, that an overly strict reading of the Constitution would result in an absurd situation where expense allowances to members of the Legislature could *never* be increased. *See Consumer Party,* 510 Pa. at 187 n.18, 507 A.2d at 338 n.18. An overly strict reading of certain provisions could also result in judicial salary raises being constitutionally impermissible, an equally absurd result.

---

DISSENTING AND CONCURRING OPINION BY JUDGE CRAIG:

Everyone is entitled to a day in court in the sense of a chance to present proof in support of a legally sufficient claim. Dismissal of this case without allowing the presentation of evidence is not warranted.

The petitioners have pleaded facts to allege that the unvouchered expense increase given to incumbents in their current terms, in the identical amount of their after-election salary hike, constitutes a salary raise contrary to Pennsylvania Constitution art. II, §8, which forbids salary increases during the term of a legislator.

Precisely because a dismissal upon demurrer cuts a plaintiff off from the right to prove the case, the courts

will sustain such a preliminary objection only when the basis for doing so is certain. Any doubt should be resolved in favor of overruling the demurrer. *Gekas v. Shapp,* 469 Pa. 1, 364 A.2d 691 (1976).

Here there has been no hearing, no stipulation, no deposition, and no sworn document other than the petition itself. Hence *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 507 A.2d 323 (1986) provides no authority for dismissing this case without some factual record. In *Consumer Party,* the Chief Justice's opinion pointed out that:

> The parties agreed to have the case resolved upon *stipulated facts* and cross-motions for summary judgment. (Emphasis added.)

510 Pa. at 166, 507 A.2d at 327. The litigants in *Consumer Party* thus chose to rest the factual issues upon a stipulation in place of a hearing.

Here the petitioners also proposed a stipulation, but the respondents rejected that *Consumer Party* approach to making a record. Thus there has been no mutual willingness to decide this case upon summary judgment, and hence no waiver of the basic right to a hearing.

The Supreme Court opinion in *Consumer Party* rules out any contention that the constitutional question is purely one of law to be decided upon the bare words of the statute. That cannot be so because the Supreme Court said:

> As long as the expense allowance fixed is reasonably related to actual expenses, the lack of mathematical precision inherent in such a system does not present a problem.

510 Pa. at 186, 507 A.2d at 337. Obviously, determination of the reasonableness of the expense allowance in relation to *actual* expenses requires some factual record within which such actualities can be proved.

Also, the Supreme Court in *Consumer Party,* referring specifically to the claim "that the allowance is in reality a veiled salary increase," held that the attackers must bear "a heavy burden of proof . . . ." *Id.* To meet a burden of proof, there must be an opportunity to submit proof.

With the stipulation before it, the Supreme Court held that the attackers there "utterly failed *to make any showing* that the expense allowance is a sham." 510 Pa. at 187, 507 A.2d at 337 (emphasis added). That case had a stipulation which provided a fact record in which a "showing" could have been made. And the expense allowance was different.

In this case there is no fact record of any kind. Thus this court cannot dispose of this present case by the statement that *Consumer Party* "noted that . . . there was no evidence to show that the expense allowance was unreasonable." A concept of "evidence" in that other case cannot be controlling here, when this case has no evidence.

Certainly, we cannot dismiss this case on the basis of "no evidence" when the dismissal itself forever would bar the petitioners from presenting any evidence.

At this point, on preliminary objections, the fundamental and unchanging rule is that this court must accept the factual averments as if they were true, in deciding the demurrer. The Supreme Court, like this court, has repeatedly said:

> For the purpose of testing the legal sufficiency of the challenged pleading a preliminary objection in the nature of a demurrer admits as true all well-pleaded, material, relevant facts . . . and every inference fairly deducible from those facts.

*County of Allegheny v. Commonwealth,* 507 Pa. 360, 372, 490 A.2d 402, 408 (1985) (citations omitted).

On the key question of whether the unvouchered expense allowance here is a payment which in fact constitutes salary, the petition pleads, among other matters, that the payment is "not in any way related to expenses actually incurred, and is completely devoid of any showing that an increase in 'expenses' is necessary." (Petition, para. 50)

That point of pleading alone makes the petition legally sufficient because it proposes to address the very fact which the Supreme Court in *Consumer Party,* quoted above, described as the test of a constitutional expense allowance—"[a]s long as the expense allowance fixed is reasonably related to actual expenses . . . ."

Accordingly, with respect to the Article II, section 8 constitutional question, there should be no dismissal of the case against the Commonwealth, and the Commonwealth should be required to file an answer.

On the other hand, sustaining the separate objections based on the Speech and Debate Clause is supported by a distinctly different aspect of the *Consumer Party* decision, where the Supreme Court affirmed this court's order sustaining preliminary objections as a matter of law on that point only, sharply distinguishable from the grant of summary judgment with reference to the other questions.

The petitioners' contentions relating to the non-severability clause should be rejected as premature. The petitioners claim that non-severability denies them access to the courts. Apparently, at least in part, their theory is that the judiciary would be disinclined to hold a statutory provision invalid if it put their own salary increase at risk. That is an unwarranted and gratuitous insult to the integrity of the judiciary. However, it is not germane to this case because judicial salaries are not involved here.

If any portion of the statute is invalidated at any stage in this case, the question of the non-severability clause might become ripe for decision thereafter, but only in some later case questioning the survival of other provisions of the statute.

Judge MACPHAIL joins this dissent.