638 A.2d 352

Senator Robert C. JUBELIRER, Senator David W. Heckler, Senator Frank A. Salvatore, Senator Clarence D. Bell, Senator Stewart J. Greenleaf, Senator Gibson E. Armstrong, Senator John J. Shumaker, Senator Richard A. Tilghman, Senator Earl M. Baker, Senator Charles D. Lemmond, Jr., Senator Tim Shaffer, Senator Roger A. Madigan, Senator Edwin G. Holl, Senator John E. Peterson, Senator F. Joseph Loeper, Senator Edward W. Helfrick, Senator James J. Rhoades, Senator Harold F. Mowery, Jr., Senator Terry L. Punt, Senator J. Doyle Corman, Senator Noah W. Wenger, Senator D. Michael Fisher, Senator Melissa A. Hart, Senator David J. Brightbill, Senator Robert D. Robbins, Petitioners,

v.

Lieutenant Governor Mark E. SINGEL, William Stinson, Senator Vincent J. Fumo, Senator Roxanne H. Jones, Senator Allyson Y. Schwartz, Senator H. Craig Lewis, Senator Chaka Fattah, Senator Hardy Williams, Senator Michael A. O'Pake, Senator Raphael J. Musto, Senator Roy C. Afflerbach, Senator Jeanette F. Reibman, Senator Robert J. Mellow, Senator Michael E. Bortner, Senator J. William Lincoln, Senator William J. Stewart, Senator Leonard J. Bodack, Senator Eugene E. Porterfield, Senator Patrick J. Stapleton, Senator Eugene F. Scanlon, Senator Michael M. Dawida, Senator Frank A. Pecora, Senator Albert V. Belan, Senator J. Barry Stout, Senator Gerald J. Lavalle, Senator Anthony B. Andrezeski, and the Senate of Pennsylvania, Respondents.

Commonwealth Court of Pennsylvania.

Argued Dec. 15, 1993.

Decided Feb. 9, 1994.

58

Robert L. Byer, for petitioners.

Gregory M. Harvey, for respondents.

Before CRAIG, President Judge, DOYLE, PALLADINO, McGINLEY, SMITH, PELLEGRINI and FRIEDMAN, JJ.

FRIEDMAN, Judge.

Petitioners, the Republican members of the Pennsylvania Senate, filed a Petition for Review in our original jurisdiction challenging the actions of Respondents, Lieutenant Governor Mark E. Singel, the Democratic members of the Senate and

the Senate itself, which resulted in the seating of William Stinson as a Senator for the 2nd Senatorial District. The Petitioners have also filed an Application for Summary Relief or in the Alternative for an Expedited Decision on the Merits. The Respondents filed Preliminary Objections to the Petition for Review as well as an Answer and New Matter in Opposition to Petitioners' Application for Summary Relief.

Because we recognized this as an issue of great public importance, whose expeditious resolution would serve the interest of justice, this court expedited argument on the Application for Summary Relief as well as on the Preliminary Objections and has expedited this decision.

## I. BACKGROUND

Underlying the legal issues in this case is political juggling over which party is to gain control of the Pennsylvania Senate. Prior to 1993, the Senate was equally divided along party lines, with 25 Democratic and 25 Republican Senators. However, during 1993, Pennsylvania held special elections to fill two vacancies. The resignation of Republican State Senator James Greenwood on January 5, 1993 created a vacancy in the 10th Senatorial District. David W. Heckler, a Republican, won the special election held on July 13, 1993 to fill the vacancy. The Bucks County Board of Elections certified Heckler to the Secretary of the Commonwealth as winner of the election and the Secretary of the Commonwealth certified Heckler's election to the President and Members of the Senate. Heckler was sworn in by Judge Michael J. Kane of the Court of Common Pleas of Bucks County on September 14, 1993 in the Senate Chambers while the Senate was not in session.

The death of Democratic State Senator Francis J. Lynch created a second vacancy in the 2nd Senatorial District. A special election to fill the seat was held on November 2, 1993. The election was close but, after absentee ballots were counted, the Philadelphia County Board of Elections certified William Stinson, a Democrat, as the winner, and the Secretary of

the Commonwealth certified Stinson's election to the President and Members of the Senate.[1] On November 18, 1993, Stinson was sworn in by Judge Sebastian Natale of the Dauphin County Court of Common Pleas in the Senate Chambers, also while the Senate was not in session but, apparently unlike Heckler, in the presence of the President and President pro tempore of the Senate.

When the Senate reconvened on November 22, 1993, for the first time since the special elections, one of the first matters of business was presentation of the election returns.[2] Following presentation of the returns for the 2nd Senatorial District, but before presentation of returns for the 10th District, Senator Jubelirer raised several questions regarding Stinson's suitability to sit as a member of the Pennsylvania Senate.[3] On consideration of the points raised, the President of the Senate ruled that Stinson was properly seated and capable of voting. This ruling was appealed by Senator Jubelirer, and following strict party lines, the Senate voted 25–24 that Senator Stinson was "eligible to vote on the question of his own seating in the Senate" (Legislative Journal, November 22, 1993, at 14), and voted 25–24 that Senator Stinson was "properly seated as a member of the Pennsylvania Senate." (Legislative Journal, November 22, 1993 at 18.) Following the votes, the transcript of Stinson's earlier swearing in was made a part of the record. The returns of the special election in the 10th Senatorial District were then presented, followed by the administration of the oath of office to Senator Heckler.[4]

1. This election is currently being contested in a separate proceeding.

2. It appears that presentation of the election returns is merely a formality. In fact, Respondents' brief refers to this process as the "ceremonial recognition" of a Senator.

3. Senator Jubelirer phrased this as a constitutional point of order "as to the propriety of Mr. Stinson's inclusion on the roll, given the invalidity of the certification underlying his oath of office." (Legislative Journal, November 22, 1993 at 13.)

4. During the votes on Senator Stinson's seating, Senator Heckler's name was not on the roll and he did not vote. While the constitutional point of order raised by Senator Jubelirer was still unresolved, Petitioners sought to have Heckler placed on the roll. However, the President of the Senate, upon checking with the parliamentarian, ruled that the

## II. ISSUES

In the Petition for Review, Petitioners ask us to declare the rulings and votes culminating in the seating of Senator Stinson invalid, contending that Senator Stinson's votes on his own seating violated Article III, section 13 of the Pennsylvania Constitution, which requires a Senate member to disclose personal or private interests in a measure or bill pending before the General Assembly and to withdraw from voting. Petitioners also contend that the entire process was conducted in violation of various other constitutional provisions, specifically the prohibition against discrimination contained in Article I, section 26 and the Article II provisions relating to the Legislature. This contention encompasses a claim that failure to place Senator Heckler's name on the roll until after the vote on seating Senator Stinson violated the Pennsylvania Constitution.

■ Respondents filed Preliminary Objections in the nature of a demurrer [5] claiming that the Petition for Review failed to

constitutional point of order relating to suitability of a member took precedence over the seating of Senator Heckler and administration of the oath of office to him. (Legislative Journal, November 22, 1993 at 19 and 20.) The reason that Senator Stinson's name was on the roll and Senator Heckler's was not apparently relates to questions surrounding the validity of Heckler's swearing in. Although Heckler's swearing in complied with the constitutional requirement, Pa. Const. art. VI, § 3, that before entering on the duties of his office a Senator take the oath of office before a person authorized to administer the oath in the Senate chamber, Heckler's swearing in apparently did not comply with statutory requirements. See, e.g., Act of March 19, 1804, P.L. 330, 4 Sm.L. 164, § 1, 46 P.S. § 1, which provides for the Speaker (President pro tempore) to administer the oaths to members elect. The validity of the oaths of office are not before us here.

Given the 25–24 vote count, Senator Jubelirer claimed that Stinson was the deciding vote on his own seating. We note, however, that had Stinson not voted, the vote would have been a tie. The tie would then have been broken by the President of the Senate who, like Stinson, is a Democrat. In a similar situation, the same President of the Senate voted to break the tie and seat Senator Pecora, a Democrat.

5. When ruling on preliminary objections in the nature of a demurrer, we must accept as true all material and relevant well-pled facts and all inferences reasonably deducible therefrom, but we are not bound by the conclusions of law advanced. *Consumers Education and Protective Association v. Nolan*, 470 Pa. 372, 368 A.2d 675 (1977).

state a claim upon which relief may be granted because (a) pursuant to the Speech and Debate clause of the Pennsylvania Constitution, Article II, Section 15, the members of the General Assembly are immune from judicial review of their legislative activities; (b) the challenged actions constitute a nonjusticiable political question; and (c) there is no legal basis for the relief sought. We will address these objections seriatim.

## A. PENNSYLVANIA SPEECH AND DEBATE CLAUSE

■ The Speech and Debate Clause of the Pennsylvania Constitution, found at Article 2, section 15, provides:

> The members of the General Assembly shall in all cases, except treason, felony, violation of their oath of office, and breach or surety of the peace, be privileged from arrest during their attendance at the sessions of their respective Houses and in going to and returning from the same; and for any speech or debate in either House they shall not be questioned in any other place.

The Pennsylvania Supreme Court has stated that the scope of the Pennsylvania Speech and Debate Clause is essentially the same as that of the federal Speech and Debate Clause and that cases clarifying the federal clause provide guidance in interpreting the Pennsylvania clause. *Consumers Education and Protective Association v. Nolan*, 470 Pa. 372, 368 A.2d 675 (1977); *Sweeney v. Tucker*, 473 Pa. 493, 375 A.2d 698 (1977) and *Consumer Party of Pennsylvania v. Commonwealth of Pennsylvania*, 510 Pa. 158, 507 A.2d 323 (1986). The federal Speech and Debate Clause has been read broadly to "protect legislators from judicial interference with their legitimate legislative activities, and that even where the activity questioned is not literally speech or debate, a court must determine if it falls within the 'legitimate legislative sphere'; if it does, the action against the legislator ... must be dismissed." *Nolan*, 470 Pa. at 382, 368 A.2d at 680–681. The Speech and Debate Clause "prohibits inquiry into those things generally said or done in the House or Senate in the performance of official duties and into motivation for those acts." *Sweeney*, 473 Pa. at 505, 375 A.2d at 704, quoting *United States v.*

*Brewster*, 408 U.S. 501, 512, 92 S.Ct. 2531, 2537, 33 L.Ed.2d 507 (1972). The protected activity includes voting. *Gravel v. United States*, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583, *rehearing denied*, 409 U.S. 902, 93 S.Ct. 98, 34 L.Ed.2d 165 (1972).

We believe that voting on the seating of Senators falls within the "legitimate legislature sphere"[6] and that the independence and integrity of the Legislature requires that the individual members of that body be immune from suit with regard to their votes on such matters. Thus, under the Speech and Debate Clause, Respondents are immune from suit here. Moreover, in *Nolan*, 470 Pa. 372, 368 A.2d 675 (1977), the Pennsylvania Supreme Court indicated that the Lieutenant Governor, acting in his capacity as President of the Senate, would also be immunized from suit under the Speech and Debate Clause.

Petitioners maintain that members of the Senate should not be protected by Speech and Debate immunity where (1) they act in contravention of the Constitution, and (2) the Senate and Senators are the only potential respondents. Asserting that both situations exist here, Petitioners argue that an exception to the immunity provided by the Speech and Debate Clause is warranted.

We note, however, that Petitioners' first concern is unjustified. Contrary to their inference, immunity of legislators does not necessarily forestall all judicial review of legislative action. Although immunity ensures "that legislators are not distracted from or hindered in the performance of their legislative tasks by being called into court to defend their actions", *Powell v. McCormack*, 395 U.S. 486, 505, 89 S.Ct.

6. The term "legitimate legislative sphere" encompasses more than the process leading up to and the passage of legislation. *Consumer Party of Pennsylvania.* In *Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), the United States Supreme Court stated that "Committee reports, resolutions, and the act of voting are equally covered, as are 'things generally done in a session of the House by one of its members in relation to the business before it.'" *Id.* at 502, 89 S.Ct. at 1954, quoting *Kilbourn v. Thompson*, 103 U.S. (13 Otto) 168, 204, 26 L.Ed. 377 (1881).

1944, 1955, 23 L.Ed.2d 491 (1969), the doctrine does not bar "judicial review of the constitutionality of the underlying legislative decision." *Id.* at 504, 89 S.Ct. at 1955. Moreover, because ultimately we conclude that no constitutional violations occurred,[7] we need not decide whether an exception to the rule of immunity might be appropriate in cases where the only respondents are legislators. In *Powell,* the U.S. Supreme Court similarly declined to reach this issue, stating: "[W]e need not decide whether under the Speech and Debate Clause petitioners would be entitled to maintain this action solely against members of Congress where no agents [of the legislature] participated in the challenged action and no other remedy was available." *Id.* at 506 n. 26, 89 S.Ct. at 1956 n. 26.

## B. THE POLITICAL QUESTION DOCTRINE

■ Pursuant to the Political Question Doctrine, which is often analogized to the principle of separation of powers, the courts will not review the actions of another branch of government where the Constitution entrusts those actions to that other branch. *Sweeney.* The Pennsylvania Constitution commits certain matters involving each house of the Legislature to that house. Article II, section 9 provides in pertinent part: "Each House ... shall judge of the election and qualifications of its members."[8] In addition, Article II, section 11 provides in pertinent part: "Each House shall have power to determine the rules of its proceedings...." These sections of the Constitution provide the basis for Respondents' contention that the seating of Stinson and the delay in seating Heckler are non-justiciable political questions.

In *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), the seminal case in this area, the U.S. Supreme Court

7. See our discussion of alleged constitutional violations in sections II.C. and II.D. of this opinion.

8. In *Donatelli v. Mitchell,* 2 F.3d 508 (3rd Cir.1993), in an opinion authored by Judge Becker, the court held that the Senate has total and unreviewable authority to judge the election and qualifications of its members. Judge Becker also noted that Senator Pecora had voted on his own seating in the Pennsylvania Senate. This vote took place in a seating dispute which was similar to but separate from the one at issue here.

discussed the standards for evaluating whether a political question exists:[9]

> It is apparent that several formulations which vary slightly according to the settings in which the questions arise may describe a political question.... Prominent on the surface of any case held to involve a political question is found a *textually demonstrable constitutional commitment of the issue to a coordinate political department;* or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.* at 217, 82 S.Ct. at 710 (emphasis added).

■ We believe that the constitutional provision granting the Senate the power to "judge of the election and qualifications of its members" encompasses the receipt of returns of elections and the seating of Senators. In addition, Article II, section 11 gives the Senate the power to determine its own proceedings. However, our conclusion that these matters are constitutionally committed to the Legislature by Article II of the Pennsylvania Constitution does not end our inquiry.

■ A determination that an issue is a nonjusticiable political question is essentially a matter of judicial abstention or restraint. As our Supreme Court has said: "To preserve the delicate balance critical to a proper functioning of a tripartite system of government, this Court has exercised restraint to avoid an intrusion upon the prerogatives of a sister branch of

9. The court in *Baker* also differentiated the Political Question Doctrine from situations where a court lacks subject matter jurisdiction, stating that the significant distinction is that in cases of nonjusticiability, consideration of the judicial inquiry is not "wholly and immediately" foreclosed. Instead, the court must make inquiry "to the point of deciding whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." *Id.* at 198, 82 S.Ct. at 700.

government.... [W]hatever theory is employed, the legitimacy of the abstention is dependent upon the situation presented." *Consumer Party of Pennsylvania*, 510 Pa. at 176–77, 507 A.2d at 332–333.

Here, Petitioners allege various constitutional violations. In such cases, we will not abdicate our responsibility to "insure that government functions within the bounds of constitutional prescription ... under the guise of deference to a co-equal branch of government.... [I]t would be a serious dereliction on our part to deliberately ignore a clear constitutional violation." *Id.* at 177–78, 507 A.2d at 333 (citations omitted). As the Supreme Court stated in *Baker v. Carr*:

Deciding whether a matter has in any measure been committed by the constitution to another branch of government, or whether the action of that branch exceeds whatever authority has been committed, is itself a delicate exercise in constitutional interpretation, and is a responsibility of this Court as the ultimate interpreter of the Constitution.

*Id.* 369 U.S. at 211, 82 S.Ct. at 706.

Petitioners argue that the Senate action (1) violated the ·disclosure and withdrawal requirements of Article III, section 13; (2) exceeded the authority granted to the Legislature under Article II; and (3) violated Heckler's civil rights as guaranteed by Article I, section 26 of the Pennsylvania Constitution. These allegations require us to exercise our role as interpreter of the Constitution and determine whether Stinson could vote on the question of whether he was properly seated, and whether the Senate action violated any of Heckler's individual constitutional rights.

## C. WHETHER STINSON WAS DISQUALIFIED FROM VOTING

We begin with several general propositions which govern our review. Because it is presumed that the Legislature does not intend to violate the Constitution, *Consumer Party of Pennsylvania*, a strong presumption of constitutionality attaches to the Legislature's actions. *Id.* Therefore,

"[o]ne seeking to negate [these] presumption[s] bears a heavy burden of persuasion." *Kennedy v. Commonwealth,* 119 Pa.Commonwealth Ct. 24, 36, 546 A.2d 733, 738–739 (1988).

Bearing this in mind, we consider Article III, section 13 of the Pennsylvania Constitution, which provides:

> A member who has *a personal or private interest in any measure or bill proposed or pending before the General Assembly* shall disclose the fact to the House of which he is a member, and shall not vote thereon.

(Emphases added.) Accordingly, for Stinson's vote to fall within the proscriptions of Article III, Section 13, it must have been a vote (a) on a matter of personal or private interest to Stinson; (b) on a measure or bill and (c) proposed or pending before the General Assembly. None of these three elements are satisfied here.

As to the first element, we note initially that Article III was adopted in 1874 to "correct the evil of unwise, improvident and corrupt legislation which had become rampant at the time of its passage." *Consumer Party of Pennsylvania,* 510 Pa. at 178, 507 A.2d at 333. To this end, sections 1 through 13 of Article III mandate procedures governing the enactment of *legislation.* Article III was "drafted in an atmosphere of extreme distrust of the legislative body and of fear of the growing power of corporations," *id.,* quoting R. Banning *Pennsylvania Constitutional Development* (1960), and, thus, was designed to prevent deception in the enactment of legislation. Recognizing the desire to eliminate secrecy and deception as a specific purpose behind Article III, the court in *Consumer Party* concluded that "[b]y requiring disclosure of a 'personal or private interest,' Article III, section 13 makes clear that its prohibition relates to the type of interest of which other members would not be generally aware." *Id.* at 187, 507 A.2d at 338, n. 18. Based upon this analysis, we conclude that a matter of personal or private interest, as that term is used in Article III, section 13, is one about which other members of the General Assembly and interested members of the public would have no knowledge without disclosure.

We recognize that because the vote concerned Stinson's Senate seat, Stinson's interest differed from that of other Senators. Nevertheless, we do not believe that Stinson's vote was prohibited by Article III, section 13 on this basis.[10] As previously stated, because Article III was designed to prevent deception in the enactment of legislation, a personal or private interest within the meaning of this constitutional provision is one which would remain unknown to other Senate members without disclosure. Here, there is no secret, undisclosed interest; thus, the element of deception is lacking.

Second, although the parties both accept that this was not a vote on a "bill" because a bill involves legislation, considerable argument is devoted to the meaning of the word "measure." Petitioners argue for a broad reading of the word "measure" to include the rulings and votes at issue here. In contrast, Respondents contend that the word "measure" in section 13 applies only to votes on proposed and pending *legislation.* We agree with Respondents. A principle of constitutional construction is that words be given their ordinary and natural meaning. *Commonwealth v. Harmon,* 469 Pa. 490, 366 A.2d 895 (1976). Webster's Third New International Dictionary defines "measure" as "a proposed legislative act: Bill." *Id.* at 1400. Accepting this definition, we are

---

**10.** Our courts have held that legislators are not precluded from voting on salary or expense account increases which would benefit them personally. In *Consumer Party of Pennsylvania,* a consumer group challenged the constitutionality of a public compensation law arguing that the enactment of the law had violated several sections of Article III, including the section 13 requirement of disclosure and the prohibition against self-interested voting. The Court agreed that judicial scrutiny was required but found that the consumer group had failed to prove a violation of Article III, in part because the element of deception was lacking. We have reached similar results in more recent cases. *Kennedy v. Commonwealth,* 119 Pa.Commonwealth Ct. 24, 546 A.2d 733 (1988); *Kremer v. Barbieri,* 48 Pa.Commonwealth Ct. 557, 411 A.2d 558, *affirmed,* 490 Pa. 444, 417 A.2d 121 (1980). Petitioners refer us to *Commonwealth v. M'Closkey,* 2 Rawles 369, an 1830 Pennsylvania Supreme Court case. We do not find that case persuasive or applicable for at least three reasons: (1) the case predated the Constitution of 1874; (2) we are here resolving constitutional issues as applied to the legislature; and (3) *M'Closkey* involves a statutory interpretation as applied to a municipality. For these reasons, *M'Closkey* is not instructive.

satisfied that a Senate vote on a constitutional point of order concerning Senator Stinson's seating is neither a "measure" nor a "bill."

Finally, a vote under Article II, which deals with how the *Senate* conducts its business, is not one proposed or pending before the General Assembly. The General Assembly consists of both the House of Representatives and the Senate. Because the House does not vote on how the Senate conducts its affairs, the final element of Article III, section 13 is not met.

In short, the matter voted on simply does not fall within the proscriptions of Article III, section 13 because it was not a measure or bill proposed or pending before the General Assembly, and Stinson's interest in the Senate seat is not a personal or private interest within the meaning of the constitutional provision. Thus, we conclude that Senator Stinson did not violate the constitutional requirements of Article III, section 13 by voting on whether he was properly seated as a member of the Pennsylvania Senate.

## D. WHETHER HECKLER'S CONSTITUTIONAL RIGHTS WERE VIOLATED

According to Petitioners' description of events, Respondents *denied* Heckler the right, as a duly elected Senator, to be seated and participate in the legislative process. Petitioners claim that by dispensing with the constitutional point of order regarding Stinson's seating before seating Heckler, Respondents arbitrarily interposed procedures in order to delay the recognition of Senator Heckler in violation of Article II. We disagree.

This characterization of events is disingenuous. Although, we recognize that Senator Stinson's election returns were read before those of Senator Heckler, we do not agree that this chronology was tantamount to a purposeful refusal to seat Senator Heckler. There is nothing in the record to indicate that, after seating Stinson, the Senate would not have immediately proceeded to do the same for Heckler, thereby seating

all Senate members before proceeding to other Senate business. Even assuming that a right existed, it was not Respondents, but Senator Jubelirer, who interrupted the seating process.

Our remaining inquiry is whether the vote on seating Senator Stinson, including the ruling that that vote took precedence over the seating of Senator Heckler, violated Heckler's individual constitutional rights protected by Article I of the Pennsylvania Constitution. The essence of Petitioners' argument is that all duly elected Senators have an equal right to participate in the proceedings of the assembly, so that by denying Senator Heckler his right to be seated and participate in this vote on an internal affair of the Senate (an Article II matter), Respondents violated Heckler's constitutional rights to due process and equal protection under the law.

Article I of the Pennsylvania Constitution is considered the counterpart to the federal due process and equal protection guarantees. Article I, Section 1 provides:

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Article I, Section 26 provides:

Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

A right to due process does not accrue unless a person has a substantial interest in the subject matter of the action. *Cresco, Inc. v. Public Utility Commission,* 154 Pa.Commonwealth Ct. 27, 622 A.2d 997 (1993). Recently, our Supreme Court has said that an elected official's interest in his or her office does not merit constitutional protection.[11] *In re*

11. In *Sweeney,* a seated member of the Pennsylvania House of Representatives was expelled following his conviction for mail fraud. Swee-

*1991 Pennsylvania Legislative Reapportionment Commission*, 530 Pa. 335, 609 A.2d 132, *cert. denied,* —— U.S. ——, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992). Thus, for Heckler to be entitled to due process protection, he must allege a greater interest than that of an elected official in taking his office.[12] Here, Petitioners' due process claim appears to rest upon the contention that Respondents' actions violated Heckler's right to vote and denied him his freedom of speech. By making this claim, Petitioners ask us to assume that the Pennsylvania Constitution guaranteed *Heckler* a right to vote on the *constitutional point of order* regarding the seating of Senator Stinson. We cannot accept this assumption. The right to vote guaranteed by the Pennsylvania Constitution is the right of suffrage to elect one's representatives. Article I, section 5. It is not the right of Heckler to vote on a constitutional point of order before receipt of his election returns by the Senate.[13]

Petitioners also assert an equal protection violation. They imply that Respondents discriminated against Heckler because he is a Republican, depriving him of his constitutionally protected right to freedom of speech and his

ney appealed, alleging that he was denied his property interest in his house seat without due process. In discussing Sweeney's interest in his office, the court stated:

> An elected office is a public trust, not the private domain of the officeholder. A member of the Legislature has a profound responsibility to represent his constituents in the formulation of public policy in this state. He holds office for the benefit of his constituents and cannot justifiably rely on a private need or expectation in holding office.... A member of the Legislature is thus subject to the political process at all times.

*Id.* 473 Pa. at 524, 375 A.2d at 713.

12. This is unlike the situation in *Powell,* in which Adam Clayton Powell was denied his salary when he was unconstitutionally excluded from taking his seat in the 90th Congress. Here, Heckler was installed as a Senate member, and there is no allegation that the "delay" in seating Heckler resulted in any deprivation of salary or benefits.

13. Our decision on Heckler's right to vote might be different if Heckler had been unable to vote on a measure or bill proposed or pending before the General Assembly or if the challenge had been brought by duly qualified electors who had voted in the special election. *See, e.g., Baker v. Carr; Powell; Melland v. Johanneson,* 160 N.W.2d 107 (N.D. 1968).

right to vote.[14]  Where, as here, the challenged action does not involve a suspect classification; i.e., one based on race, alienage or national origin, and does not burden a fundamental constitutional right, the legislative actions are subject to a rational basis review.  Under this standard, "the challenged classification must be upheld 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification'." *Donatelli v. Mitchell,* 2 F.3d 508, 513 (3rd Cir.1993), quoting *FCC v. Beach Communications, Inc.,* —— U.S. ——, ——, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993). The ruling by the President of the Senate, upon checking with the parliamentarian, that the constitutional point of order took precedence over other questions raised, provides a rational basis for the delay in seating Heckler and for Heckler's inability to participate in voting regarding the seating of Stinson.  This ruling related to internal operating procedures of the State Senate, not Senator Heckler's freedom of speech as member of the polity or to his individual franchise as a member of the electorate.  (*See* Senate Rule XI 6.) [15]  For the reasons set forth, we conclude that Heckler's individual constitutional rights were not violated by the Senate's actions.

## III.  CONCLUSION

Based upon the foregoing analysis, we conclude that Petitioners' Petition for Review fails to state a claim for which relief can be granted.  Accordingly, we sustain Respondents' Preliminary Objections and dismiss Petitioners' Petition for Review and Application for Summary Relief.

SMITH J., concurs in the result only.

14.  The prohibition against discrimination is an individual right which only Heckler has standing to assert.  Petitioners here include all Republican Senators; however, there can be no legitimate assertion that the delay in seating Heckler discriminated against the individual rights of other Republican Senators.

15.  Even a seated Senator cannot speak with total freedom but is subject to parliamentary rules.

74

PALLADINO J., did not participate in the decision of this case, which was reached after the conclusion of her services.

Judges COLINS and KELLEY did not participate in the decision in this case.

## ORDER

AND NOW, this 9th day of February, 1994, the Preliminary Objections of Respondents are sustained and the Petition for Review and the Application for Summary Relief of Petitioners are dismissed.